IN re Andrea Gayle Smith















IN THE
TENTH COURT OF APPEALS
 

No. 10-03-390-CV

IN RE ANDREA GAYLE SMITH


 

 Original Proceeding
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

      This case concerns a petition for writ of injunction. Andrea Gayle Smith petitions this
Court to issue a writ staying the trial court’s order modifying custody of Smith’s children and
staying enforcement of the order. We will dismiss the petition.
      When Andrea and Scott Smith were divorced in 2002, the trial court appointed them joint
managing conservators of their two children, A.C.S. and G.E.S., and ordered that Andrea
have the right to establish the primary residence of the children “without restriction.” See
Tex. Fam. Code Ann. § 153.134(b) (Vernon Supp. 2004). Thereafter, Andrea moved out of
state with the children. Scott filed a petition to modify the parent-child relationship. In
August, 2003, the trial court orally rendered judgment limiting the geographic area within
which Andrea could establish the children’s primary residence to certain counties in Texas, to
take effect on December 1, 2003. When Andrea filed her petition on December 4, the trial
court had not signed an order. On December 5, the court signed an order that limits Andrea’s
right to establish the children’s primary residence to an area comprising forty-eight designated
Texas counties, to take effect December 15. The order also provides that if Andrea does not
do so, Scott will have the right to establish the children’s primary residence. On December 5,
Andrea gave notice of appeal of the order. We have docketed that appeal, styled In the Interest
of A.C.S. and G.E.S., as cause number 10-03-392-CV.
      The courts of appeals have limited injunctive powers. “Each court of appeals . . . may
issue . . . all . . . writs necessary to enforce the jurisdiction of the court.” Tex. Gov’t Code
Ann. §  22.221(a) (Vernon Supp. 2004). A court of appeals “has no original jurisdiction to
grant writs of injunction, except to protect its jurisdiction over the subject matter of a pending
appeal, or to prevent an unlawful interference with the enforcement of its judgments and
decrees.” Ott v. Bell, 606 S.W.2d 955, 957 (Tex. Civ. App.—Waco 1980, no writ). Unlike
in the trial court, where a temporary injunction will lie to preserve the status quo pending trial,
see Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993), injunction will not lie in the courts
of appeals merely to preserve the status quo pending appeal, EMW Mfg. Co. v. Lemons, 724
S.W.2d 425, 426 (Tex. App.—Fort Worth 1987, orig. proceeding). Nor will injunction lie
merely “to protect a party from damage pending appeal.” Gibson v. Waco Indep. Sch. Dist.,
971 S.W.2d 199, 204 (Tex. App.—Waco 1998) (quoting Parsons v. Galveston County
Employees Credit Union, 576 S.W.2d 99, 99 (Tex. Civ. App.—Houston [1st Dist.] 1978, no
writ)), Gibson vacated on other grounds, 22 S.W.3d 849 (Tex. 2000).
      We lack jurisdiction to issue the writ. Andrea argues that an injunction would best
preserve the status quo pending appeal and would prevent hardship to her. Neither argument
brings her petition within our writ jurisdiction. Andrea relies on authority that holds that the
courts of appeals’ writ jurisdiction to protect their jurisdiction over the subject matter of a
pending appeal includes the prevention of the appeal’s becoming moot. See Pendleton Green
Assocs. v. Anchor Sav. Bank, 520 S.W.2d 579, 582 (Tex. Civ. App.—Corpus Christi 1975, no
writ). “[A] case becomes moot when a court’s actions cannot affect the rights of the parties.” 
Pinnacle Gas Treating, Inc. v. Read, 104 S.W.3d 544, 545 (Tex. 2003). Here, the
enforcement of the trial court’s order does not deprive us of the power to affect the rights of
Andrea and Scott. Even if Andrea loses and Scott gains the exclusive right to establish the
primary residence of the children, we will have the power to reverse the trial court’s order in
Andrea’s pending appeal. Accordingly, the petition is dismissed.
      In connection with her petition, Andrea also filed a Motion for Emergency Stay. See Tex.
R. App. P. 52.10(a). On December 10, 2003, we handed down an Order that stayed “all
further proceedings in the trial court, subject to further order of this court.” On December 24,
2003, we handed down an Amended Order for Temporary Relief, in which we limited the stay
to that part of the trial court’s order restricting Andrea’s right to establish the primary
residence of the children, and otherwise permitted the court to enforce its order. A court of
appeals may grant temporary relief only pending the court’s action on a petition in an
extraordinary proceeding. Id. Since we dismiss the petition, we now lift those stays.


                                                                   TOM GRAY                                                                                                             Chief Justice
 
Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
(Justice Vance not participating)
Petition dismissed
Opinion delivered and filed February 11, 2004
[CVOT]



an id="WPFootnote3" class="WPFloatStyle">' );
 document.write( WPFootnote3 );
 document.write( '
Close' );
 document.write( '' );
 }

 Instead, Ellis relies upon the last sentence of Rule 902(10)(a):
"Notice shall be deemed to have been promptly given if it is served in the manner contemplated
by Rule 21a, Texas Rules of Civil Procedure, fourteen days prior to commencement of trial in said
cause." (Emphasis added). Such a provision does not require notice to be given pursuant to Rule
21a, but merely provides a definite means of satisfying the "prompt notice" requirement. Because
Ellis only objected that the requirements of Rule 21a had not been satisfied, and the record does
not reflect that the State failed to give prompt notice in some other manner, we overrule point of
error one.
      In point two Ellis contends that the court erred in overruling his motion for mistrial when he
discovered that one of the jurors failed to disclose during voir dire that he knew a key prosecution
witness and her family. When a juror withholds material information in the voir dire process, the
parties are denied the opportunity to exercise their challenges, thus hindering their selection of an
impartial and disinterested jury.


 When a partial, biased, or prejudiced juror is selected without
fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the
answers given to him on voir dire examination, unaware that they are inaccurate, good ground
exists for a new trial.


 In this case, however, no information was withheld by the juror. During
the State's voir dire examination, the prosecutor asked the venire if anybody knew Wanda
Richards. No one responded to the prosecutor's question. Defense counsel followed-up only by
asking an individual veniremember whether he knew Wanda Richards. Neither attorney identified
the witness as Wanda Fowler, her maiden name, or as Wanda Donoho, her name by a previous
marriage.
      After the jury was sworn and the indictment read, but before opening statements, defense
counsel examined the juror as follows:
Q. You did not advise the lawyers that you knew a Wanda Richards because you didn't
realize until this morning that her name wasn't Richard any more—or it wasn't—you
didn't recognize her under the name of Richards.
 
A. Right.
 
Q. Because the way you knew her was when her name was Fowler. Her married name
was Fowler?
 
A.No. She was Fowler before she married. Then she married my cousin and it made
her Donoho. And that's if [sic] only two names I have ever know her by.
 
Q. All right. And how much contact have you had with Wanda Fowler Donoho
Richards since?
 
A. In the—since—in the last—I was a pallbearer at her dad's funeral, I don't know,
about 15 years ago, and just see her at a gas station or something like that maybe twice.
 
. . . .
 
Q. I asked you if it would have any effect on your sitting as a juror in this case, and your
answer was "no"?
 
A. I don't believe it would. I don't know anything about the trial. I don't know—I
don't know why it would. If they get up there and tell what they are supposed to do.

      Defense counsel then objected that the juror was disqualified and requested a mistrial because
the juror failed to reveal his familiarity with the witness. In denying Ellis' motion for mistrial,
the court noted on the record that the witness was not in the courtroom during the voir dire
examination. The trial court is the trier of fact at the hearing on a motion for mistrial and the
court's findings will not be disturbed absent an abuse of discretion.


 Because the record does not
reflect that the juror withheld any information when the prosecutor asked whether anyone knew
Wanda Richards, and because the defense attorney did not diligently pursue his concern that
members of the venire might know a State's witness by a different name, we overrule point of
error two.
      In point three Ellis contends that the court erred in overruling his objection to the State's
cross-examination during the punishment phase of the trial regarding his two prior convictions for
unlawfully carrying a weapon. Furthermore, Ellis contends that the court erred in denying his
motion for mistrial following the prosecutor's improper closing argument during the punishment
phase. At the outset we observe that the point is multifarious. Such a multifarious point fails to
properly preserve any error.


 Nevertheless, we will address the points because they direct this
court to the complaints raised.



      Ellis took the stand during the punishment phase of the trial for the sole purpose of testifying
that he had never been convicted of a felony in this state or any other state or under the laws of
the United States. The prosecutor then pursued the following inquiry on cross-examination:
Q. Mr. Ellis, you've been convicted of unlawfully carrying a weapon, in 1976; haven't
you?
 
[Defense Counsel]: Judge, we're going—excuse me. We're going to object to that. 
That is not a proper question. That is an offense that is not admissible in this cause. And
he knows that.
 
(An on-the-record bench conference was had as follow:)
 
[Prosecutor]: Is it a final conviction?
 
[Defense Counsel]: No; it's a misdemeanor.
 
[Prosecutor]: It's my opinion that the—
 
(Both attorneys were whispering simultaneously and the reporter is unable to make
a clear record at this point.)
 
[Prosecutor]: It's probative.
 
THE COURT: I overrule the objection.
 
(Upon completion of the bench conference, the following occurred:)
 
Q. You were convicted of unlawfully carrying a weapon in 1976; weren't you?
 
[Defense Counsel]: We would further object, that it is not probative in nature and
is more prejudicial than probative. (sic)
 
THE COURT: I overrule the objection.
 
A. Yes, sir.
 
Q. You were also convicted of unlawfully carrying a weapon, in 1980; were you not?
 
A. Yes, sir.

First, we note that any complaint regarding the 1980 conviction was waived because defense
counsel failed to object to its admission.


 Furthermore, evidence of the prior convictions was
admissible, not because it was proper impeachment under Rule 609 of the Rules of Criminal
Evidence, but because it was evidence of the "prior criminal record of the defendant" as defined
by article 37.07, section 3, of the Texas Code of Criminal Procedure.


 According to the Court
of Criminal Appeals, a misdemeanor conviction is admissible during the punishment phase as "a
final conviction in a court of record" under article 37.07, section 3.


 Therefore, the court
properly overruled Ellis' objection to the admission of his prior convictions for unlawfully
carrying a weapon.
      Ellis also complains of the following comments made by the prosecutor during his closing
argument:
You have a situation that you've got a pattern. He started—started off carrying a
weapon. He got convicted of it. He didn't learn his lesson. Four years later he got
convicted of carrying a weapon, again. And why does someone carry an illegal weapon? 
Why is someone convicted of carrying a weapon? You don't get convicted if you're out
bird hunting. You don't get convicted if you're going to target practice. Why does
someone carry a weapon? They carry a weapon to kill people, folks.
 
[Defense Counsel]: That is not—that's not in the record, Your Honor. We're going
to object to that. And that is a misstatement of the law.

(Emphasis added). The court sustained the objection and instructed the jury not to consider the
argument for any purpose, but denied Ellis' motion for mistrial.
      Proper jury argument falls within one of the following categories: (1) a summary of the
evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument;
or (4) a plea for law enforcement.


 All other arguments are improper. Although the prosecutor
was entitled to summarize the evidence and to make reasonable deductions from the evidence,
including the evidence of Ellis' two prior convictions for unlawfully carrying a weapon, for a
prosecutor to argue outside the record is improper.


 As a result, the trial court properly sustained
Ellis' objection that the prosecutor's comment—"They carry a weapon to kill people, folks"—was
outside the record. 
      However, when the trial court instructs the jury to disregard the improper argument but denies
the defendant's motion for mistrial, error results only when the argument is extreme, manifestly
improper, injected new or harmful facts into the case, or violated a mandatory statutory provision
and was thus so inflammatory that its prejudicial effect could not reasonably be removed from the
minds of the jurors by the instruction given.


 The prosecutor did not repeat the improper
argument, but, instead, directed the jury's attention back to the evidence concerning the prior
convictions and made a proper plea for law enforcement. Based on our examination of all the jury
arguments, we hold that the prejudicial effect of the improper argument was removed from the
minds of the jurors by the court's instructions to disregard the prosecutor's comment, and thus,
no error occurred in denying the motion for mistrial.


 We overrule point of error three.
      We affirm the judgment.

                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed October 6, 1993
Do not publish